UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

PETER E. SLIMAN, ) No. CV-06-320-LRS
 )
          Plaintiff, ) **ORDER GRANTING**
 ) **MOTION FOR SUMMARY**
v. ) **JUDGMENT, IN PART**
 )
BOISE CASCADE, L.L.C., )
a Limited Liability corporation, )
 )
          Defendant. )

**BEFORE THE COURT** is the Defendant's Motion For Summary Judgment (Ct. Rec. 9). Oral argument was heard on October 24, 2007. Paul J. Burns, Esq., argued on behalf of Plaintiff. William J. Schroeder, Esq., argued on behalf of Defendant.

**I. BACKGROUND**

This case was removed to this court from Stevens County Superior Court based on diversity jurisdiction. Plaintiff Peter E. Sliman asserts a claim under the Washington Law Against Discrimination (WLAD), RCW 49.60.180 et seq., and a claim for negligent infliction of emotional distress premised on an alleged breach of a duty to provide a safe place to work under the Washington Industrial Safety and Health Act (WISHA), RCW 49.17.060.

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, IN PART-      1**

## II. UNDISPUTED FACTS

Plaintiff began working as an electrician for Boise Cascade Corporation in 1988 at its Kettle Falls, Washington plant.

In 1998, Plaintiff was promoted to the position of maintenance supervisor. This was a managerial position and required Plaintiff to supervise the work of between 16 to 28 people in the maintenance department.

Prior to his promotion, Plaintiff routinely worked significant amounts of overtime. Likewise, when he accepted the position of maintenance supervisor, Plaintiff routinely worked 50 hours a week or more.

In 1999, Plaintiff was promoted to the position of maintenance superintendent. In this position, Plaintiff, with the aid of a maintenance supervisor, Rudy Richartz, continued to supervise the work of 16-28 employees in the maintenance department.

Plaintiff's position did not change when, on October 30, 2004, Defendant Boise Cascade, L.L.C., purchased the Kettle Falls, Washington plant from Boise Cascade Corporation.

On November 1, 2000, Plaintiff's primary care physician, Patrick J. Shannon, M.D., wrote a letter concerning Plaintiff's physical and mental condition. According to Dr. Shannon, at that time, Plaintiff suffered from stress burn-out, recurrent episodes of significant chest pain, ongoing stomach complaints, progressive fatigue and inanition, and chronic sleep apnea.

Plaintiff discussed Dr. Shannon's November 1, 2000 letter with Lori Johanson-Fogle, the human resources manager for Boise Cascade Corporation, as well as with Clyde "Corkie" Palmer, the plant manager for Boise Cascade Corporation's Kettle Falls, Washington plant.

During their discussions with Plaintiff, Ms. Johanson-Fogle and Mr. Palmer advised Plaintiff he needed to more effectively manage his hours, needed to delegate portions of his workload, and needed to stop working so many hours.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, IN PART-    2**

In early 2004, Plaintiff was diagnosed with prostate cancer. Consequently, Plaintiff was placed on short-term disability and did not work between May 2004 and August 5, 2004.

When Plaintiff returned to work, his physician, Dr. Shannon issued a letter conditionally releasing Plaintiff to work no more than four hours per day, five days per week.

Plaintiff understood this work restriction, and had several conferences with Mrs. Johanson-Fogle, Mr. Palmer and others at Boise Cascade Corporation to discuss its implications for his work.

Plaintiff did not comply with either his physician's restriction or the instructions of Boise Cascade Corporation, but resumed working more than four hours a day.

Subsequently, there were additional discussions between Plaintiff, Mrs. Johanson-Fogle, Mr. Palmer and others at Boise Cascade Corporation regarding the need for Plaintiff to limit himself to four hours per day, five days per week. Mr. Palmer met with Plaintiff approximately once a week to address the fact that Plaintiff continued to exceed his work restrictions. Plaintiff assured Palmer that he never extended himself beyond what he felt he could do. During these discussions, Plaintiff was advised that several individuals, including maintenance supervisor Rudy Richartz, were willing to cover whatever responsibilities Plaintiff was unable to meet as a result of his restricted workload. Plaintiff would agree with the advice and instructions given to him, but following the meetings, would proceed to work beyond his doctor's restriction.

In September 2004, Plaintiff returned to Dr. Shannon, this time seeking an unlimited release to work. Dr. Shannon advised Plaintiff that he would release him for no more than eight hours a day, five days a week. Dr. Shannon advised Plaintiff that he would never release Plaintiff for more than that amount.

After learning of Plaintiff's new medical work restriction issued in

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, IN PART-    3**

September 2004, Boise Cascade Corporation, and then Boise L.L.C. after it purchased the Kettle Falls, Washington plant on October 30, 2004, instructed Plaintiff to comply with his physician's restriction and work no more than eight hours per day, five days per week.

Plaintiff did not comply with the restriction to work no more than eight hours per day, five days per week.

Plaintiff demanded that Boise L.L.C. hire an additional maintenance supervisor. Creating, filling and maintaining such a position would have cost Boise L.L.C. approximately $100,000 per year.

On July 5 or 6, 2005, Plaintiff notified Boise L.L.C. of his intent to retire from his position as maintenance superintendent.

Shortly thereafter, Plaintiff went back to Dr. Shannon and advised him that he needed a note for permanent disability. Dr. Shannon provided Plaintiff with a note, dated August 5, 2005, indicating that Plaintiff was unable to work because of his condition. Plaintiff decided to retire and his last day of work at Boise L.L.C. was on August 5, 2005.

In connection with his retirement, Plaintiff went on short-term disability, long-term disability, and then retirement disability.

## III. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. Zweig v. Hearst Corp., 521 F.2d 1129 (9th Cir.), cert. denied, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit

**ORDER GRANTING MOTION FOR**
**SUMMARY JUDGMENT, IN PART-      4**

under the governing law. Anderson, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Id. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the non-movant. Matsushita, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. Celotex, 477 U.S. at 322-23.

## IV. DISCUSSION

### A. Washington Law Against Discrimination (WLAD)

Under the WLAD, it is unlawful for an employer to discriminate against any person in the terms or conditions of employment, or discharge any employee because of the presence of any sensory, mental, or physical disability. RCW 49.60.180(2) and (3). If the employer fails to reasonably accommodate the limitations of a disabled employee, such failure constitutes discrimination unless the employer can demonstrate such an accommodation would be an undue hardship to the employer's business. Snyder v. Medical Serv. Corp., 98 Wn.App. 315, 326, 988 P.2d 1023 (1999).

A prima facie case of failure to reasonably accommodate a disability under the WLAD includes: (1) the employee had a sensory, mental, or physical

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, IN PART-    5**

1  abnormality that substantially limited his or her ability to perform the job; (2) the
2  employee was qualified to perform the essential functions of the job in question;
3  (3) the employee gave the employer notice of the abnormality and its
4  accompanying substantial limitations; and (4) upon notice, the employer failed to
5  affirmatively adopt measures that were available to the employer and medically
6  necessary to accommodate the abnormality.  Davis v. Microsoft Corporation, 149
7  Wn.2d 521, 532, 70 P.3d 126 (2003).

8       Here, Defendant does not contest that Plaintiff suffers from a "disability" as
9  defined in RCW §49.60.040(25)(a)-(b).  Defendant, however, contends that it
10 reasonably accommodated that disability and the court should find so as a matter
11 of law.

12      An employer's responsibility to provide reasonable accommodation requires
13 it to: (1) determine the extent of the employee's disability and how it could be
14 accommodated; (2) take affirmative steps to help the employee continue working
15 in his existing position; (3) take affirmative steps to inform the employee of job
16 opportunities within the company; and (4) consider the employee for and move
17 him into openings for which he is qualified.  Griffith v. Boise Cascade, Inc., 111
18 Wn.App. 436, 442, 45 P.3d 589 (2002).  An employer is not required to offer the
19 exact accommodation an employee desires.  Doe v. Boeing Co., 121 Wn.2d 8, 20,
20 846 P.2d  531 (1993).

21      The WLAD requires the employee be qualified to perform the essential
22 functions of the job in question.  Davis, 149 Wn.2d at 532.  An "essential
23 function" is "a job duty that is fundamental, basic, necessary, and indispensable to
24 filling a particular position, as opposed to a marginal duty divorced from the
25 essence or substance of the job."  Id.  "Essential functions" refer not only to the
26 tasks and activities that are indispensable to the job, but also the "conduct" and
27 "service" required of the employee.  Therefore, job presence or attendance may be
28 an "essential function."  Id. at 533-34.  An employer is not required to eliminate an

**ORDER GRANTING MOTION FOR**
**SUMMARY JUDGMENT, IN PART-        6**

"essential function" from a job. Id. at 534. "Requiring elimination of an indispensable task or role would be tantamount to altering the very nature or substance of the job." Id. An employer is not required to reassign the employee to a position that is already filled, to create a new position, to alter the fundamental nature of the job, or eliminate or reassign essential job functions. MacSuga v. County of Spokane, 97 Wn.App. 435, 442, 983 P.2d 1167 (1999). "If the only successful accommodation is to eliminate essential functions, then the employee cannot perform the essential functions of the job with reasonable accommodation." Id. at 443.

An employer is not required to provide an accommodation if the employee's disability imposes an undue hardship on the employer. Griffith, 111 Wn.App. At 442. An undue hardship is defined as an "action requiring significant difficulty or expense when considered in light of various factors." Morton v. United Parcel Service, 272 F.3d 1249, 1256 (9th Cir. 2001). Generally, whether an employee's request for an accommodation would create an "undue hardship" for the employer is a question of fact for the jury. Snyder, 98 Wn. App. at 327.

Plaintiff alleges that the demands of his job as a maintenance superintendent made it impossible to comply with the four hour per day restriction that Dr. Shannon imposed on him in August 2004. Plaintiff says he asked for additional support and assistance, but Defendant failed to provide the same. Even when Dr. Shannon decreased the restriction to eight hours per day in September 2004, Plaintiff claims he still could not comply with the demands of the job. He claims he again asked for support and assistance, but that Defendant failed to provide the same. Plaintiff asserts that in October 2004, when Defendant's regional engineer, Mike Hulst, resigned from the position, Defendant sought to increase Plaintiff's work responsibilities by asking him to assume some of the duties of the vacated regional engineer position.

Defendant contends that by telling the Plaintiff he should comply with his

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, IN PART-** 7

doctor's restriction on the number of hours to be worked per day, it "reasonably accommodated" the Plaintiff and cannot be held responsible for Plaintiff's failure to accept the accommodation. While this argument has some logical appeal, the difficulty is that, by Defendant's own admission, it is not based on an analysis of what comprised the "essential functions" of Plaintiff's "existing position" as a maintenance superintendent. If the Plaintiff could not perform the "essential functions" of his job with an eight hour restriction, it seems the Defendant was not even obligated to offer that restriction as an accommodation.[1] Yet, the Defendant offered the accommodation, perhaps indicating a willingness to suspend or even eliminate certain "essential functions" of Plaintiff's position.  Plaintiff contends and has testified that Defendant's intentions were not so good and that in fact, shortly after telling Plaintiff to comply with the eight hour restriction, Defendant asked Plaintiff to perform additional duties created by the vacancy in the regional engineer position, thereby making the eight hour restriction even more unreasonable.[2] In other words, the inference is that by not giving him the assistance he requested and imposing additional duties upon him, the Defendant set the Plaintiff up for failure in order to force him out of his position. In essence, Plaintiff's argument is that the Defendant said one thing ("limit yourself to eight hours"), but meant another and expected the Plaintiff to still perform all of the

---

[1] There is no assertion by Defendant that Plaintiff should have been able to perform the "essential functions" of the maintenance superintendent position in an eight hour day.

[2] The testimony from Defendant's management personnel is that they were attempting to create a new position for the Plaintiff that would involve doing some of the regional engineer duties, but otherwise relieve Plaintiff of his maintenance superintendent responsibilities. Plaintiff claims such a position was never offered to him. It appears that, under the law, that Defendant was not obligated to create a new position for the Plaintiff.

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, IN PART-      8**

duties of maintenance superintendent, "essential" and "non-essential" functions, plus some of the duties of the vacant regional engineer position.[3]

Generally, whether an employer breached its duty of reasonable accommodation is a question of fact for jury determination. Pulcino v. Federal Express Co., 141 Wn.2d 629, 644, 9 P.3d 787 (2000). At this juncture, the court concludes there is a genuine issue of material fact whether Defendant's apparent willingness to abide by the eight hour restriction was truly a "reasonable" accommodation.  It must be emphasized, however, that at a later juncture, after a determination of the "essential functions" of Plaintiff's existing position as a maintenance superintendent, it may yet be appropriate to determine as a matter of law that Defendant's offer to abide by the eight hour restriction was a "reasonable" accommodation, indeed perhaps even an accommodation it was not legally obligated to offer (and should not be penalized for having offered), if Plaintiff was not able to perform the "essential functions" of maintenance superintendent in an eight hour day.[4]  The court notes it is Plaintiff's burden to show he could perform the "essential functions" of his existing position as maintenance superintendent with "reasonable" accommodation. Bass v. City of Tacoma, 90 Wn.App. 681, 688, 953 P.2d 129 (1998), *as amended*, 976 P.2d 1248, *review denied*, 137 Wn.2d 1005, 972 P.2d 466 (1999).

//

//

---

[3] Corkie Palmer testified he told the Plaintiff to limit himself to the fluid bed problem, but Plaintiff disputes that he was ever told by anyone to limit his duties.

[4] Such a determination may make immaterial any dispute whether Plaintiff was asked to perform regional engineer duties in addition to the duties of his existing position as maintenance superintendent.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, IN PART-    9**

**B.  Negligent Infliction of Emotional Distress Under WISHA**

RCW 49.17.060 of the WISHA provides in relevant part that:

> Each employer:
>
> (1) Shall furnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees . . . .

In his complaint, Plaintiff alleges Defendant breached this statutory duty "by failing to intervene and alleviate [Plaintiff's] burdensome responsibilities" after being notified by Plaintiff and his physician "that the arduous and onerous responsibilities [Defendant] placed on [Plaintiff] were having an increasingly debilitating effect upon his health."  As a result, Plaintiff claims he was constructively discharged from employment on February 4, 2006 because of total disability, and suffered severe mental anguish and emotional distress.

"[A]bsent a statutory or public policy mandate, employers do not owe employees a duty to use reasonable care to avoid the inadvertent infliction of emotional distress . . . ."  Snyder v. Medical Service Corp., 145 Wn.2d at 233, 244, 35 P.3d 1158 (2001), quoting Bishop v. State, 77 Wn.App. 228, 234-35, 889 P.2d 959 (1995).  Plaintiff alleges that WISHA, RCW Chapter 49.17, provides a statutory and public policy mandate requiring that employers provide a safe place to work, including a place where emotional distress is not inadvertently inflicted upon employees.

RCW 49.17.060 does not explicitly refer to emotional distress ("hazards that are causing or likely to cause serious injury or death to . . . employees") and Plaintiff cites no Washington case that has suggested as much.  Plaintiff also cites RCW 49.17.010 which sets forth the purpose of WISHA:

> The legislature finds that **personal injuries and illnesses** arising out of conditions of employment impose a substantial burden upon employers and employees in terms of lost production, wage loss, medical expenses and payment of benefits **under the industrial insurance act**.  Therefore, in the public interest of the welfare of the people of the state of Washington and in order to

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, IN PART-    10**

> assure, insofar as may reasonably be possible, safe and healthful working conditions for every man and woman working in the state of Washington, the legislature in the exercise of its police power, and in keeping with the mandates of Article II, section 35 of the state Constitution, declares its purpose by the provisions of this chapter to create, maintain, continue, and enhance the industrial safety and health program of the state, which program shall equal or exceed the standards prescribed by the Occupational Safety and Health Act of 1970.

(Emphasis added).

While the language in RCW 49.17.010 is arguably broad enough to encompass emotional injuries and illnesses as "personal injuries and illnesses," it also makes clear that the purpose of WISHA is tied to Washington's Industrial Insurance Act (IIA), RCW Title 51. WISHA's purpose is to create, maintain, continue, and enhance the industrial safety and health program of Washington, thereby lessening the burden on the industrial insurance system. As Defendant points out, WISHA and the IIA are both administered by the Director of the Department of Labor and Industries, RCW §§ 43.22.270(4) and 51.04.020.

If Plaintiff's emotional distress is an "injury" covered by WISHA, then Plaintiff's exclusive remedy for breach of the duty to provide a safe workplace lies under the IIA and not through a private civil suit.[5] On the other hand, if Plaintiff's

---

[5] RCW §51.04.010 of the IIA provides in relevant part:

> The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, IN PART-      11**

emotional distress is not an "injury" covered by WISHA, then he cannot rely on WISHA to assert a breach of duty to provide a safe workplace and, as noted above, Snyder precludes a common law action against Defendant for failure to use reasonable care to avoid inadvertent infliction of emotional distress in the workplace.

There is no case law holding that WISHA covers emotional distress injuries. Assuming, however, it does cover such injuries, there is also no case law holding that WISHA is independent of the IIA, permitting a private civil suit under WISHA for recovery of emotional distress damages. The cases cited by Plaintiff, McCarthy v. Social and Health Services, 110 Wn.2d 812, 759 P.2d 351 (1988), Wheeler v. Catholic Archdiocese of Seattle, 65 Wn. App. 552, 829 P.2d 196 (1992), and Goodman v. Boeing, 127 Wn.2d 401, 899 P.2d 1265 (1995), did not involve claims premised on a duty arising under WISHA. Those cases do not mention WISHA. They simply stand for the proposition that the IIA does not bar recovery for a separate emotional injury asserted in a **common law** negligent infliction of emotional distress action. Plaintiff has not asserted a common law negligent infliction of emotional distress action. Per *Snyder*, such an action is not cognizable. The nature of WISHA and its language which clearly links it to the IIA persuades the court that if there is a remedy under WISHA for emotional distress inadvertently inflicted by an employer, the IIA is the exclusive remedy.[6]

---

such causes are hereby abolished, except as in this title provided.

[6] If the Defendant is ultimately found liable to the Plaintiff for a violation of the WLAD, Plaintiff can seek an award of damages to compensate him for any emotional distress suffered by him as a result of that violation.

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, IN PART-     12**

## V. CONCLUSION

Defendant's Motion For Summary Judgment (Ct. Rec. 9) is **GRANTED IN PART** and **DENIED IN PART**. Defendant is granted judgment on Plaintiff's WISHA claim. Judgment is denied on Plaintiff's WLAD claim.[7]

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and provide copies of it to counsel of record.

**DATED** this ___1st___ day of November, 2007.

s/Lonny R. Suko
_____
LONNY R. SUKO
United States District Judge

---

[7] In Plaintiff's complaint, it is alleged that "[a]s a direct and proximate result of Defendant's unlawful, discriminatory employment practices, Plaintiff was constructively discharged from his employment on or about February 4, 2006." Constructive discharge, however, is not pled as a separate claim. Unlike a simple failure to accommodate claim, an unlawful discharge claim requires a showing that the employer terminated the employee because of disability. From a practical standpoint, the two claims are often the same since the consequence of the failure to accommodate is frequently an unlawful termination. Humphrey v. Memorial Hospitals Association, 239 F.3d 1128, 1139 (9th Cir. 2001).

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, IN PART-    13**